MARTIN *v.* GRAY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 1065. Submitted December 7, 1891. — Decided December 21, 1891.

When a person, whose equity of redemption in mortgaged real estate is foreclosed, rests inactive for eleven years, with full knowledge of the foreclosure, and of the purchaser's rights claimed under it, and of his own rights, and with nothing to hinder the assertion of the latter, and then files a bill in equity to have the foreclosure proceedings declared void for want of proper service of process upon him, this court will at least construe the language of the returns so as to sustain the legality of the service, if that can reasonably be done, even if it should not regard it as too late to set up such a claim.

THE court stated the case as follows:

On September 29, 1890, appellant filed his bill in the Circuit Court of the United States for the District of Kentucky, the object of which was to set aside a commissioner's deed to defendant, executed years before, in pursuance of certain proceedings in the District Court of the United States for that district. The facts as alleged were these:

Prior to May 2, 1879, the plaintiff, his mother, sister and brother, were the owners, each, of an undivided one-fourth of a lot in the city of Louisville, which lot was subject to a lease from the four owners to Thomas Slevin, who, as tenant, had built thereon houses of great value. On January 9, 1865, plaintiff had given to Thomas Slevin his note for two thousand dollars, payable in two years, and had secured the same by a mortgage of his undivided one-fourth of said property. Interest thereon was paid regularly until January 9, 1869, by the

application of a part of the rents coming to plaintiff under the lease, but after that date Slevin failed and refused to so apply the rents, but claimed to set them off against goods sold to plaintiff. On February 21, 1877, Slevin was adjudged a bankrupt in proceedings in the United States District Court, and Stephen E. Jones was elected his assignee. On February 5, 1878, Jones, as assignee, commenced a suit in the same court to foreclose the mortgage, in which suit, besides plaintiff and his wife, the other joint owners were made parties defendant. In that suit, a decree of foreclosure was entered on May 22, 1879, and on August 11, 1879, the property was sold by R. H. Crittenden as special commissioner, and the sale having been confirmed on September 30, 1879, a deed was made to the purchaser, the present defendant, who thereupon took possession and has ever since collected the rents and profits.

In respect to the service of process on plaintiff, the bill alleged as follows:

"Your orator further says that he never appeared or answered in said cause, and no one appeared for him, as by the orders and record therein, still remaining in the District Court aforesaid, fully appears, nor was there any service of the subpœna upon him otherwise than that the following return appears upon the subpœna issued in said cause and which is on file with the papers thereof:

"'J. C. Hays, S. H. C., is hereby appointed special bailiff to execute the within subpœna on J. S. Martin and Mary A. Martin, February 13, 1878.

"'R. H. CRITTENDEN,
"' U. S. Marshal.

"'Executed the within spa. on J. S. Martin and Mary A. Martin by delivering a copy to each in person, February 14, 1878.

"'R. H. CRITTENDEN,
"' U. S. Marshal.

"'J. C. HAYS,
"'S. H. C., Special Bailiff.'

"And that there was no such service also appears from the record and papers in said cause still remaining therein; yet, although your orator never appeared or answered in the cause and was never subpœnaed to answer therein, the complainant in said cause," etc.

Upon these facts the bill prayed for a decree setting aside the commissioner's deed, and for an accounting as to the rents and profits received by the defendant. A demurrer thereto was sustained, and the plaintiff electing to stand by the bill, a final decree was entered dismissing it. From this decree plaintiff appealed to this court.

*Mr Lewis N. Dembitz* for appellant.

*Mr. B. F. Buckner* and *Mr. James S. Pirtle* for appellee.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The contention of plaintiff is that the return on the subpœna is wholly worthless, and shows no service; and that the decree and decretal sale, based on such a return alone, are null and void. The following are the two rules in equity which regulate the manner of service:

### "Rule XIII.

"The service of all subpœnas shall be by a delivery of a copy thereof by the officer serving the same to the defendant personally; or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant, with some adult person who is a member or resident in the family.

### "Rule XV.

"The service of all process, mesne and final, shall be by the marshal of the district, or his deputy, or by some other person specially appointed by the court for that purpose, and not otherwise. In the latter case, the person serving the process shall make affidavit thereof."

It is insisted that the service in this case was not made by the marshal, or his deputy, but by J. C. Hays, who was not a

person appointed by the court for the service of this process, and who made no affidavit of service.

Before considering the question of service, a preliminary matter is worthy of mention. This is an application to a court of equity, to set aside deliberate proceedings of a court of superior jurisdiction; and is made more than eleven years after the matters complained of took place. There is no allegation that the subpœna was not in fact delivered to the plaintiff, or that he was ignorant of the proceedings in court, or of the possession taken and held by the defendant. While the bill alleges that plaintiff was at the time of the filing a citizen of Kansas, it does not show how long he had been such. It is averred that the plaintiff's mother, sister and brother, joint owners with himself of the property, were made parties defendant to the foreclosure proceedings; and it is not averred that they were not duly served with process. It is shown that the defendant entered into possession immediately after the sale, and has continued in possession, receiving the rents and profits. From what is stated in the bill, as well as from what is omitted, it is a fair inference that this plaintiff received the subpœna at the time the original suit was commenced; that he was aware of all the proceedings in the court; that he knew of the change in possession; and that he remained in Louisville for years thereafter, with full knowledge that the defendant had the possession, claimed it under the decree, supposed he was owner, and received the rents and profits as owner, and yet during all those years made no complaint, and took no steps to assert any rights as against the decree and sale.

Now, it is a rule of equity, that an unreasonable delay in asserting rights is a bar to relief. A familiar quotation from Lord Camden, in *Smith* v. *Clay*, 3 Bro. Ch. 638, is that "nothing can call forth this court into activity but conscience, good faith and reasonable diligence." Is not the delay disclosed by this bill such laches as to defeat plaintiff's claim? For eleven years he was inactive, and, as may be fairly inferred from the bill, with the full knowledge of his rights, and nothing to hinder their assertion. No excuses for this are given — the bill is absolutely silent as to any reasons for delay.

But if this long delay will not of itself bar plaintiff's claim, it at least compels any reasonable construction of language which will sustain the decree. Now, it is not averred in the bill that service was not made by the marshal, nor that Hays was not a general deputy. What relations he sustained to the marshal, what position he held under him, are not disclosed otherwise than by the return on the subpœna. While from that it may be inferred that he was a special bailiff, with only such powers as were given by the designation written on the subpœna, yet it is consistent with all that appears that he was also a general deputy, who was by the marshal designated for this special service. More than that, it is a fair question from the return as to who in fact made the service. The return is signed —

"R. H. Crittenden,
        "U. S. Marshal.

"J. C. Hays,
        "S. H. C., Special Bailiff."

and not —

R. H. Crittenden,
        U. S. Marshal.

By J. C. Hays,
        S. H. C., Special Bailiff.

If it were not for the designation above the return, it would not be doubted that the latter was to be construed as showing service by the marshal, and the name of the special bailiff would be disregarded as surplusage. Giving to the designation all the force that fairly belongs to it, it is a reasonable construction of the return that the service was made by the marshal and the bailiff, either jointly or severally. And if severally, then on the two defendants, respectively, in the order in which they are named, which would make that on this plaintiff service by the marshal himself. Further, the District Court is one of superior jurisdiction, in favor of the validity of whose proceedings when collaterally attacked is every intendment. Its jurisdiction in any case will be presumed, unless it appears

affirmatively on the face of the record that it had not been acquired.

Putting, therefore, these things together, to wit, the unex-plained delay, the reasonable inferences from what is stated and what is omitted, the presumptions in favor of jurisdiction and the different constructions of which the language of the return is susceptible, we are of the opinion that the ruling of the Circuit Court sustaining the demurrer to the bill was cor-rect, and its decree is

*Affirmed.*