**GONZALES et al. v. YTURRIA LAND & LIVESTOCK CO. et al.**

**Civ. A. No. 335.**

District Court, S. D. Texas, Brownesville Division.

July 1, 1947.

D. B. Chapin, of Mission, Tex., Brown & Scarborough, of Corpus Christi, Tex., and R. Tuck Chapin, of San Antonio, Tex., for plaintiffs.

Strickland, Ewers & Wilkins, of Mission, Tex., J. W. Timmins, of Dallas, Tex., and Davenport & Ransome, of Brownsville, Tex., for defendants.

HANNAY, District Judge.

Joaquin Trevino Gonzales and others, alleging that they are Mexican citizens and subjects and natives of the Republic of Mexico, and claiming to be the rightful owners of the land involved herein, bring this suit against Yturria Land & Livestock Company, Garcia Land & Livestock Company, Chapotal Land Company, Sun Oil Company, and Sinclair Prairie Oil Company, for the title and possession of:

"An undivided one-sixth (1/6) interest of, in and to all that certain tract or grant of land situated in Starr County, Texas, and commonly and generally known as, called and being Porcion No. 99, and originally granted by the Spanish Government in America in 1767 to Ignacio Antonio de Ayala, and forming a segregated part of the Spanish Province of Tamaulipas and of the Jurisdiction of Camargo, and containing 6,554 acres of land.

"Also, an undivided one-sixth (1/6) interest in and to that certain grant of land situated in Starr County, Texas, and known as Porcion No. 100 of the said Ancient Jurisdiction of Camargo, and originally granted by the Spanish Government in America to Juan Geronimo Vasquez in 1767, and containing 4,623 acres of land.

'Said two tracts of land lie continuous to each other and are situated in the southeast corner of said 'Ancient Jurisdiction of Camargo', and in the southeast corner of Starr County."

In addition to allegations of title to the above-described premises, and ejection therefrom, and unlawful witholding by defendants, plaintiffs claim title by reason of Art. VIII of the Treaty of Guadalupe Hidalgo, 9 Stat. 922, 929, and because, they say, the following instruments in defendants' chain of title were either forged or fraudulently obtained:

(1) Deed dated December 15, 1830, from Jose Eusebio de Trevino et al., to Ignacio de Trevino.

(2) The report of 1851 by the Bourland-Miller Commission to the legislature of the State of Texas to the effect that Ignacio de Trevino was the assignee of the original grantees of Porcions 99 and 100.

(3) The confirmation act of 1852 by the legislature of the State of Texas, confirming Porcions 99 and 100 to the heirs of Ignacio Trevino.

(4) A judicial certificate as to heirship, etc., dated and filed for record in March, 1855.

(5) Two patents, dated March 12, 1880, from the State of Texas to the heirs of Ignacio Trevino, covering Porcions 99 and 100.

Plaintiffs also assert that a certain affidavit, dated and filed for record in May, 1929, executed by F. W. Seabury, an attorney at law, now deceased, does not speak the truth.

Plaintiffs admit that defendants and their predecessors in title have had, since as early as 1851, possession of the land in

question, and have filed a brief from which I quote as follows: "Plaintiffs admit that the defendants have title to said land under the limitation statutes of Texas provided they are not suspended by the stipulations of the treaty of Guadalupe Hidalgo and/or are not tolled by the concealed fraud of the defendants and their predecessors in title."

Plaintiffs have also filed a separate motion asking for the appointment of a receiver and for an accounting.

Defendants, answering herein, deny, among other things, plaintiffs' alleged title and all allegations of fraud, forgery, and knowledge and notice thereof. They also deny having any connection with obtaining or filing Seabury's affidavit, or any knowledge thereof. In addition to their answer, defendants have filed a motion to dismiss plaintiffs' case because, they (defendants) say, plaintiffs have not stated a cause of action against them, and pray for summary judgment. In support thereof they urge five points, to wit: (1), laches; (2), four-year statute of limitation [1]; (3), denial of any special privileges under the treaty of Guadalupe Hidalgo different from or superior to citizens of the United States; (4), the three-year statute of limitation [2]; and (5), the presumption of a deed or deeds.

### Discussion of Applicable Law.

■ I hold that defendants' plea of laches, or stale demand, is good, and same should be sustained.

■ I conclude that plaintiffs' attempt to allege an equitable right to set aside confirmation of Porcions 99 and 100 by the political authorities of the State of Texas to the heirs of Ignacio Trevino on February 10, 1852, and the patents of said porcions extended by the proper authorities of the State of Texas on March 12, 1880, which depend upon the allegations of fraud, should not be considered after the expiration of the longest period of limitation described by the statutes of Texas, such period being twenty-five (25) years. See Art. 5519, Revised Statutes of Texas, Vernon's Ann.Civ.St. art. 5519.

In the often quoted from case of Johnson v. Smith, 21 Tex. 722, Mr. Justice Wheeler, speaking for the court, said: "* * * There certainly should be some period of time beyond which grants and patents should cease to be open to such attacks in the hands of innocent bona fide holders. The door should be closed at some time against the temptation to frauds and perjuries, otherwise there will be no security in paper titles. No one can safely purchase the fairest apparent title without taking the precaution to inquire into the circumstances attending its emanation." And he further observes: "As the question of fraud must be referred to the decision of a jury, men's titles may be made to depend on the frail and treacherous memory of witnesses, or their own personal popularity, or freedom from popular prejudice."

The Supreme Court in Howard v. Colouhoun, 28 Tex. 134, after citing the language above-used with approval, says: "If titles can be thus attacked, time, instead of lending a helping hand to cure apparent defects and removing opposing claims, will only be the means and afford a ready opportunity of rendering them less secure against mistakes, frauds and perjuries. The older the title the less secure it becomes against such attacks. Presumptions of the regularity and justness of old titles should be freely indulged in, in order, as stated by Chancellor Pluckett, 'to repair the injuries committed by time.'"

The following Texas cases reiterate and reaffirm the doctrine above announced: Maxey v. O'Connor, 23 Tex. 234; Williams v. Talbot, 27 Tex. 159; State v. Galveston

---

[1] Art. 5529, Title 91, Revised Statutes of Texas:

"All other actions barred, when: Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

[2] Art. 5507, Title 91, Revised Statutes of Texas:

"Three years' possession. Suits to recover real estate, as against a person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action accrued, and not afterward. Acts 1841, p. 119; P.D. 4622; G.L. Vol. 2, p. 621."

City Co., 38 Tex. 12; Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221; Allison v. Texas Co., Tex.Civ.App., 161 S.W.2d 167; Allison v. California Petroleum Co., Tex.Civ. App., 158 S.W.2d 597, and Clark v. United Production Co., Tex.Civ.App., 156 S.W.2d 1022.

■ The local, or Texas law is the proper law to apply in the determination of this question. However, the decisions of the United States Courts pertaining to Texas matters have given a construction in conformity therewith. In the case of Amaya v. Stanolind Oil & Gas Co., D.C., 62 F. Supp. 181, 5 Cir., 158 F.2d 554, certiorari was denied by the Supreme Court of the United States, 67 S.Ct. 1191, and in Kenedy Pasture Co. v. State, 111 Tex. 200, 231 S.W. 683, the Supreme Court also denied certiorari, as reported in 258 U.S. 617, 42 S.Ct. 271, 66 L.Ed. 793. In both of these cases, involving Texas lands, substantially the same questions were at issue as are here at issue, except for plaintiffs' allegations of fraud and forgery in the case here under consideration.

In Gourner v. Polmer, 156 F.2d 207, 209, the Fifth Circuit passed on a question of fraud which was alleged to have occurred many years before. In deciding this case, Judge McCord said:

" * * * Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others and cannot be excused except by showing some actual hindrance or impediment caused by the fraud of the party in possession, and no such showing is made here. Langdeau v. Hanes, 21 Wall. 521, 88 U.S. 521, 22 L.Ed. 606; Morrow v. Whitney, 95 U.S. 551, 24 L.Ed. 456; Joplin v. Chachere, 192 U.S. 94, 24 S.Ct. 214, 48 L.Ed. 359; Gonsoulin's Heirs v. Gulf Co., 5 Cir., 116 F. 251; 198 U.S. 115, 117, 118, 25 S.Ct. 608, 49 L.Ed. 970; Richards v. Mackall, 124 U. S. 183, 187, 8 S.Ct. 437, 31 L.Ed. 396; Bryan v. Kales, 134 U.S. 126, 135, 10 S.Ct. 435, 33 L.Ed. 829; Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134; Martin v. Gray, 142 U.S. 236, 12 S.Ct. 186, 35 L.Ed. 997; Alsop v. Riker, 155 U.S. 448, 459, 15 S.Ct. 162, 39 L.Ed. 218; Abraham v. Ordway, 158 U.S. 416, 420, 15 S.Ct. 894, 39 L.Ed. 1036.

" 'No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights have occurred.' Marsh v. Whitmore, 21 Wall. 178, 22 L.Ed. 482; McKnight v. Taylor, 1 How. 161, 168, 11 L.Ed. 86; Lansdale v. Smith, 106 U.S. 391, 392, 1 S.Ct. 350, 27 L.Ed. 219; Norris v. Haggin, 136 U.S. 386, 10 S.Ct. 942, 34 L.Ed. 424."

■ Since plaintiffs have admitted in their brief that defendants have a good limitation title to the property herein involved unless the provisions of Art. VIII of the Treaty of Guadalupe Hidalgo apply, and unless defeated by their claim of fraud and forgery, I see no reason for a further discussion on that point except to hold that the defendants do have a good limitation title under the three and the four-year statutes of limitation of Texas, which results in their title being full, valid, and unassailable.

■ I further hold in favor of defendants' presumption of a deed, or deeds, for all of the reasons set forth in detail in the case of Amaya v. Stanolind Oil & Gas Co., supra, particularly at pages 205 and 206 of 62 F.Supp., where the cases of Magee v. Paul, 110 Tex. 470, 221 S.W. 254; United State v. Chavez, 175 U.S. 509, 20 S.Ct. 159, 44 L.Ed. 255, are cited and quoted from.

### Conclusions of Law.

In accordance with the views above expressed, and from information apparent from the face of the record, I conclude as a matter of law that plaintiffs have failed to state a cause of action. It therefore follows that plaintiffs' motion for the appointment of a receiver and accounting should be, and same hereby is, in all things, denied.

Defendants' motions for summary judgment and to dismiss should be, and same are hereby, in all things granted.

Plaintiffs should be, and they are hereby taxed with all court costs in this behalf incurred.

The Clerk will notify counsel.